**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF TENNESSEE, LEAGUE OF WOMEN VOTERS OF TENNESSEE EDUCATION FUND, AMERICAN MUSLIM ADVISORY COUNCIL, MID-SOUTH PEACE & JUSTICE CENTER, MEMPHIS CENTRAL LABOR COUNCIL, ROCK THE VOTE, and HEADCOUNT, | |
| *Plaintiffs*, | |
| v. | |
| TRE HARGETT, in his official capacity as Secretary of State of the State of Tennessee, MARK GOINS, in his official capacity as Coordinator of Elections for the State of Tennessee, HERBERT H. SLATERY III, in his official capacity as Attorney General of the State of Tennessee, the STATE ELECTION COMMISSION, and DONNA BARRETT, JUDY BLACKBURN, GREG DUCKETT, MIKE MCDONALD, JIMMY WALLACE, TOM WHEELER, and KENT YOUNCE, in their official capacities as members of the State Election Commission, | No. 3:19-cv-385 Hon. Aleta A. Trauger |
| *Defendants*. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

Plaintiffs respectfully submit their opposition to Defendants' Motion to Dismiss, ECF No. 39. Defendants argue that this Court lacks jurisdiction over Plaintiffs' claims and that Plaintiffs have failed to state a claim. For the reasons discussed below, the Court should deny Defendants' motion.

## ARGUMENT

### I. APPLICABLE LEGAL STANDARDS

Defendants urge three grounds on which Plaintiffs' claims should be dismissed, each unpersuasive and contrary to clearly established law. First, Defendants argue Plaintiffs lack standing. Second, Defendants argue Plaintiffs' claims are not ripe for review. Third, Defendants argue Plaintiffs have failed to state a claim upon which relief may be granted. Their first two grounds raise jurisdictional issues, pursuant to Rule 12(b)(1); the third disputes the legal sufficiency of Plaintiffs' claims pursuant to Rule 12(b)(6).

A motion to dismiss under Rule 12(b)(1) "may either attack the claim of jurisdiction on its face, or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros., Inc.*, 410 F. 3d 879, 881 (6th Cir. 2005). In considering a facial attack, the court must consider all allegations by the plaintiff as true, whereas in considering a factual attack, the court "must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). "A facial attack questions merely the sufficiency of the pleadings [unlike] a factual attack [where] the court may consider evidence outside the pleadings." *Durham v. Martin*, No. 3:17-cv-01172, 2019 WL 2123262, at *4 (M.D. Tenn. May 14, 2019) (internal quotation marks and citations omitted).

To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In considering

1

a motion under Rule 12(b)(6), courts must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (citation omitted). A motion to dismiss should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (internal quotation omitted).

## II.     THIS COURT HAS SUBJECT MATTER JURISDICTION

Plaintiffs are organizations working to help voters to register in Tennessee. Plaintiffs allege that HB 1079 / SB 0971 as enacted ("the Law") violates the First and Fourteenth Amendments to the Constitution. Defendants do not dispute the facts Plaintiffs allege in their Amended Complaint. As such, the Court must take Plaintiffs' allegations as true and determine whether they are sufficient to invoke this Court's jurisdiction. *See DLX Inc.*, 381 F.3d at 516.

### A.  Plaintiffs Have Standing to Pursue Each of Their Claims.

Organizations have standing in their own right when they allege: "(1) an injury in fact; (2) a causal connection between the injury and the challenged conduct that is fairly traceable to the defendant's actions; and (3) that the requested relief will redress the injury." *Miami Valley Fair Hous. Ctr., Inc. v. Connor Grp.*, 725 F.3d 571, 576 (6th Cir. 2013). "At the pleading stage, general factual allegations of injury arising from the defendant's conduct may suffice, for on a motion to dismiss [courts] presume that general allegations embrace those specific facts that are necessary to support the claim." *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 710 (6th Cir. 2015) (citation omitted). Here, Defendants dispute only that Plaintiffs allege an injury in fact. *See* Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") at 9, ECF No. 40.

To demonstrate injury in fact, a plaintiff organization may show a "concrete and demonstrable injury to [an] organization's activities" or a "consequent drain on the

organization's resources." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *see also*

*Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc.*, 210 F. App'x 469, 477 (6th Cir. 2006)

(recognizing "diversion of funds" as a "sufficient injury to confer standing"); *Hous. Opps. Made*

*Equal, Inc. v. Cincinnati Enquirer, Inc.*, 943 F.2d 644, 646 (6th Cir. 1991) (holding plaintiff had

properly pleaded organizational standing based on allegations that it had to "devote resources to

investigate and negate the impact of" discriminatory advertisements). In this case, Plaintiffs

have established standing both as a result of the direct injury to their activities as well as the

diversion of their scarce resources.

The Law is aimed directly at Plaintiffs and other organizations that conduct voter

registration drives. Plaintiffs also allege the direct and imminent detrimental effects the Law will

have on their voter registration activities if the Law goes into effect on October 1. *See, e.g.*, Am.

Compl. ¶¶ 179, 193–97, ECF. No. 37. Attempting compliance with the Law will reduce the total

amount of voter registration activity Plaintiffs can engage in and will make their voter

registration activities less effective. The civil and criminal penalties threatened by the Law will

further diminish Plaintiffs' voter registration activities by, among other things, severely

curtailing Plaintiffs' ability to recruit volunteers and staff. *Id.* ¶¶ 11, 13, 54, 108, 141–45. In

short, Plaintiffs allege injuries that are neither "imaginary [n]or speculative,"*cf. Younger v.*

*Harris*, 401 U.S. 37, 42 (1972), but rather "concrete and demonstrable," *Havens Realty Corp.*,

455 U.S. at 379.

Further, as Plaintiffs allege, the Law has already caused and will continue to cause

Plaintiffs to divert organizational resources from existing priorities in preparation for attempting

compliance with the Law. *See, e.g.*, Am. Compl. ¶¶ 12, 35, 42, 50, 59, 67, 89, 92, 94, 179. This

diversion has already "restricted [their] political activities within the state and . . . limited their

3

ability to associate." *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 544 (6th Cir. 2014). Such pleadings support standing because they "articulate[] 'a factual showing of perceptible harm' resulting from the state's regulations." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 566 (1992)).

Defendants argue these allegations are insufficient to state a claim for relief because the Law is not yet in effect and Plaintiffs do not plead any intent to break the Law. This is not the constitutional standard. Plaintiffs need not "first expose [themselves] to actual arrest or prosecution to be entitled to challenge [the] statute that [they claim] deters the exercise of [their] constitutional rights." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). Rather, Plaintiffs must simply establish "an intention to engage in a course of conduct arguably affected with constitutional interest, but proscribed by a statute, and [that] there exists a credible threat of prosecution thereunder." *Id.* Plaintiffs have clearly done so here.

Plaintiffs allege that they engage in and plan to continue the very activities that are severely burdened by the Law: conducting voter registration drives and communicating with the public about voter registration. Absent the Law, Plaintiffs' voter registration activities would not be restricted in the manner the Law requires. They also allege that the Law will hamper their overall level of voter registration activity and cause their remaining voter registration activity to be substantially less effective. Further, Plaintiffs specifically allege that their attempts to comply with the Law will be costly, demanding the diversion of substantial organizational resources. *See* Am. Compl. ¶¶ 2, 35, 42, 50, 59, 67, 89, 92, 94, 179, 193–97. Finally, the Law's provisions for criminal and civil sanctions for noncompliance create "a credible threat of prosecution thereunder." *Babbitt*, 442 U.S. at 298. This is particularly so as the Law's sanctions apply to even inadvertent errors. *See* Am. Compl. ¶¶ 128–34; *see also id.* ¶¶ 135–49.

4

Indeed, Plaintiffs allege just the sort of First Amendment injuries that the Supreme Court has determined are sufficient to support standing in the pre-enforcement context. *See, e.g.*, *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392–93 (1988) (finding injury in fact where plaintiffs would have had to take "significant and costly compliance measures or risk criminal prosecution"); *Clements v. Fashing*, 457 U.S. 957, 962 (1982) (finding case-or-controversy requirement met where plaintiffs "alleged in a precise manner that, but for the sanctions of the . . . provision they seek to challenge, they would engage in the very acts that would trigger the enforcement of the provision"); *see also Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Mich. Gaming Control Bd.*, 172 F.3d 397, 406 (6th Cir. 1999) (plaintiff "need not make costly futile gestures simply to establish standing, particularly when the First Amendment is implicated"). Plaintiffs are "presently or prospectively subject to the regulations, proscriptions, [and] compulsions" on their First Amendment activities "that [they are] challenging." *Laird v. Tatum*, 408 U.S. 1, 11 (1972) (describing the sort of regulations for which standing is established due to First Amendment chill, and citing *Baird v. State Bar of Ariz.*, 401 U.S. 1 (1971); *Keyishian v. Bd. of Regents*, 385 U.S. 589 (1967); *Lamont v. Postmaster Gen.*, 381 U.S. 301 (1965); *Baggett v. Bullitt*, 377 U.S. 360 (1964), as such examples). Plaintiffs allege how these proscriptions have already begun chilling—and will continue to chill—their speech and associational activities. This sort of chill constitutes actual injury. *Id.*; *see also Pennell v. City of San Jose*, 485 U.S. 1, 8 (1988) (noting "likelihood of enforcement . . . is a sufficient threat of actual injury to satisfy Art. III's requirement").

Finally, the mere fact that Defendants have not promulgated administrative regulations or guidance does not undermine Plaintiffs' standing. *See* Defs.' Mem. at 10. Nor does the fact that prosecutors in Tennessee enjoy broad discretion as a general rule. *Id.* In *National Rifle*

*Association of America v. Magaw* ("*NRA*"), the Sixth Circuit reversed the dismissal of a complaint on standing and ripeness grounds where plaintiffs alleged that passage of a new law would force them to "either terminate a line of business, make substantial expenditures in order to comply with the Act, or willfully violate the statute and risk serious criminal penalties." 132 F.3d 272, 276 (6th Cir. 1997). The court deemed this an immediate harm sufficient to support standing. Plaintiffs here allege the Law creates a similar set of impossible choices. Compliance with the Law will require Plaintiffs to choose between terminating certain voter registration activities, expending substantial resources to ensure compliance, or risk violating the Law and incurring serious criminal and civil penalties. *See id.*; *see also Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 531 (6th Cir. 1998). The risks of injury are even more pressing where, as here, First Amendment rights are at stake rather than economic harm alone. *See, e.g.*, *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984) ("[W]hen there is a danger of chilling free speech, the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged."); *see also infra* Section II.E (regarding associational standing).

### B. The Matter Is Ripe for This Court's Review.

Defendants' ripeness arguments fail for the same reasons. The ripeness doctrine aims "to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985) (citation omitted). "A claim is ripe where it is 'fit for judicial decision' and where 'withholding court consideration' will cause hardship to the parties." *Hill v. Snyder*, 878 F.3d 193, 213 (6th Cir. 2017) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149, 153 (1967)). And as a practical matter, "[t]he line between Article III standing and ripeness in preenforcement First Amendment

challenges has evaporated." *Winter v. Wolnitzek*, 834 F.3d 681, 687 (6th Cir. 2016). As Plaintiffs plead facts sufficient to support standing, *see supra* Section II.A, so too is the case ripe.

The disagreement here is anything but abstract: Plaintiffs are in the crosshairs of the Law—which goes into effect in less than three months—and already suffering harms from its impending effective date. Indeed, Plaintiffs allege myriad facts showing that the Law is *already* impacting their constitutionally protected activity. Am. Compl. ¶¶ 12, 35, 42, 50, 59, 67, 89, 92, 94. Moreover, Plaintiffs allege several deficiencies in the Law that raise "purely legal" issues—which are presumptively ripe for review. *Abbott Labs.*, 387 U.S. at 149; *Hill*, 878 F.3d at 213–14. Plaintiffs allege that the Law is facially overbroad and unconstitutionally vague, in violation of the First and Fourteenth Amendments. Likewise, Plaintiffs allege that the Law's unequal application to paid and unpaid voter registration organizations lacks a rational basis. They allege that the Law restricts core political speech and its requirements cannot withstand any level of scrutiny. Am. Compl. ¶¶ 11–16, 105–08, 126, 182–88, 190–97. Implementing regulations would not undo these harms.

Withholding immediate judicial consideration here "will cause hardship to the parties." *Hill*, 878 F.3d at 213. Plaintiffs plan on continuing their work in helping Tennessee citizens register to vote and to exercise Plaintiffs' own First Amendment rights through voter registration efforts, *see* Am. Compl. ¶¶ 26, 29, 31–35, 38, 44, 46, 79, 102, and therefore necessarily expose themselves to the risk of civil penalties and criminal prosecution. That risk of civil and criminal penalties will also inevitably deter some members, volunteers, and staff from participating in Plaintiffs' crucial work, reducing its overall effectiveness. Declining to take up this case on ripeness grounds would cause substantial hardship to Plaintiffs by "forcing them to choose between refraining from core political speech on the one hand, or engaging in that speech and

risking costly . . . proceedings and criminal prosecution on the other." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 168 (2014); *see also* 13B Wright, Miller & Cooper, Fed. Practice & Procedure § 3532.3 (3d ed.) ("First Amendment rights of free expression and association are particularly apt to be found ripe for immediate protection, because of the fear of irretrievable loss. In a wide variety of settings, courts have found First Amendment claims ripe, often commenting directly on the special need to protect against any inhibiting chill."). Thus, Plaintiffs need not wait until the Law has gone into effect or they have actually been subject to prosecution or civil fines before they are able to challenge the Law as unconstitutional.

Contrary to Defendants' contentions, Plaintiffs may challenge laws "well before their effective date." *Thomas More Law Ctr. v. Obama*, 651 F.3d 529, 536–37 (6th Cir. 2011), *abrogated on other grounds by Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012) (permitting a challenge to proceed three years before its effective date); *see also New York v. United States*, 505 U.S. 144, 175 (1992) (permitting challenge filed six years before statute's effective date to proceed as ripe); *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 536 (1925) (same for challenge three years before effective date).

Defendants also argue that the matter is not ripe because "[r]ulemaking necessary to implement the Act has not occurred yet." Defs.' Mem. at 12. No rulemaking is necessary, however, to render the Law effective. Indeed, for two of the challenged provisions, administrative rulemaking is merely permissive rather than mandatory, Tenn. Code Ann. §§ 2-2-142(e), 2-2-143(f), and for the third challenged provision, the Law does not authorize any government entity or actor to enact implementing regulations, *see id.* § 2-19-145. Plaintiffs are not obligated to wait for *potential* administrative rulemaking by the government before they may challenge an unconstitutional law with unconstitutional effects.

Finally, Defendants' argument that the third provision is subject only to prosecutorial discretion *favors* immediate judicial resolution, as such discretion heightens the chilling effect due to fear of prosecution and arbitrary application of the Law to Plaintiffs' First Amendment protected activity. *See United States v. Stevens*, 559 U.S. 460, 480 (2010) (prosecutorial discretion did not mitigate constitutional violation "merely because the Government promised to use it responsibly"); *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972) ("A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.").

## III. PLAINTIFFS PLEAD VALID CAUSES OF ACTION

### A. Plaintiffs Plead a Valid First Amendment Free Speech and Association Claim (Claim I).

Defendants would have this Court ignore clear precedent and conclude on their word alone that the First Amendment protections of free speech and association are not implicated by the Law. Such a conclusion would be contrary to the facts Plaintiffs plead in their Amended Complaint and well-established precedent. Plaintiffs allege facts demonstrating that their voter registration drive activities and public communications, both of which are restricted by the Law, are core political expression. *See* Am. Compl. ¶¶ 2, 13, 16, 82, 103, 105–07, 181. Specifically, Plaintiffs allege that through their voter registration drives they educate others about "how political participation can lead to social change and make democratic institutions more responsive to community needs," *id.* ¶ 103, and "how the act of registering to vote helps underrepresented persons and communities establish their political worth, standing, and right to speak at the polls," *id.* Through their voter registration efforts, Plaintiffs "express the importance of civic engagement and political participation, particularly among politically underrepresented

9

groups," *id.* ¶ 106, and their "assistance to others in registering to vote is a political statement in and of itself: that they value the democratic process and the rights of all eligible citizens to access the franchise," *id.* And their "public communications," which would be subject to the Law's disclaimer requirement, are plainly political expression. *Id.* ¶¶ 157–69.

Defendants disclaim the applicability of *Meyer v. Grant*, 486 U.S. 414 (1988), but do not explain why. Defs.' Mem. at 13. Yet under *Meyer* and its progeny, it is apparent that Plaintiffs allege a valid First Amendment speech and association claim. In *Meyer*, much as here, the plaintiffs were engaged in direct outreach to fellow citizens to engage them with the political structures of the state: there, in signing a petition for inclusion of a question on the ballot, and here, by completing and submitting voter registration forms. There, the Court held that the plaintiffs "seek by petition to achieve political change in Colorado [and] their right freely to engage in discussions concerning the need for that change is guarded by the First Amendment." *Meyer*, 486 U.S. at 421. Here, Plaintiffs allege that they "seek by [voter registration drives] to achieve political change in [Tennessee];" *id.*; *see* Am. Compl. ¶¶ 2, 13, 16, 82, 103, 105–07, 181, and thus "their right freely to engage in discussions concerning the need for that change is guarded by the First Amendment," *Meyer*, 486 U.S. at 421.

The challenged Law goes well beyond controlling "voter registration and election regulation," Defs.' Mem. at 13—it directly burdens core political speech.[1] *See Buckley v. Am.*

---

[1] Even were the Court persuaded that the Law should be reviewed only as a regulation on the election process, Defendants' motion to dismiss fares no better. Just as in *Meyer v. Grant*, 486 U.S. 414 (1988), the balancing test of *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992), requires strict or exacting scrutiny where election regulations impose severe burdens on First Amendment activity. This is so because "when regulations of core political speech are at issue it makes little difference whether we determine burden first because restrictions on core political speech so plainly impose a 'severe burden.'" *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 208 (1999) (Thomas, J., concurring); *see also id.* at 192 n.12 (majority opinion agreeing that applying exacting scrutiny to law regulating core

*Const. Law Found., Inc*., 525 U.S. 182, 204 (1999) (paid circulator disclosure requirements regulate speech); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 345–46 (1995) (election-related disclosure requirements regulated speech, not electoral process); *Am. Const. Law Found., Inc. v. Meyer*, 120 F.3d 1092, 1104–05 (10th Cir. 1997) ("[C]ompelling the disclosure of the identities of every paid circulator chills paid circulation, a constitutionally protected exercise"); *Hernandez v. Woodard*, 714 F. Supp. 963, 973 (N.D. Ill. 1989) ("Where groups . . . seek to advance their goals through the electoral process, regulations preventing their members from becoming registrars impair their ability effectively to organize and make their voices heard.").

Although Defendants do not deny that advocating for and collecting petition signatures is core political speech, they insist that advocating for and collecting voter registration forms is not. But no principled distinction exists between these two activities. Indeed, courts have repeatedly recognized that voter registration activity, like that conducted by Plaintiffs, constitutes political expression: "The interactive nature of voter registration drives is obvious: they convey the message that participation in the political process through voting is important to a democratic society." *Project Vote v. Blackwell*, 455 F. Supp. 2d 694, 706 (N.D. Ohio 2006) (striking down similar restrictions on voter registration activity); *see also League of Women Voters of Fla. v. Browning* ("*Browning II*"), 863 F. Supp. 2d 1155, 1158–59 (N.D. Fla. 2012) (holding that the assertion that laws regulating voter registration drives "implicate no constitutional rights is plainly wrong" and that such laws regulate "core First Amendment activity"); *League of Women*

political speech and associational activities is consistent with framework of strictly scrutinizing laws imposing severe burdens on speech or association). Plaintiffs allege that the burdens imposed by the Law are severe. Defendants' *Anderson-Burdick* analysis is inapposite at the motion to dismiss stage. The test—which involves a careful balancing of the burdens of the Law, the importance of the state-asserted interests, and the fit between them—requires the development of a factual record before it is applied. Though Defendants opine that the Law will prevent the "disenfranchisement" of voters, Defs.' Mem. at 14, 17, factual assertions about the supposed benefits of the Law are not suited for a motion to dismiss.

*Voters v. Browning* ("*Browning I*"), 575 F. Supp. 2d 1298, 1322 (S.D. Fla. 2008) ("Undoubtedly, Plaintiffs' interactions with prospective voters in connection with their solicitation of voter registration applications constitutes constitutionally protected activity."); *League of Women Voters of Fla. v. Cobb*, 447 F. Supp. 2d 1314, 1333 (S.D. Fla. 2006) (concluding that law restricting third-party voter registration activity "reduced the total quantum of speech" because "as part of their voter registration drives, [the plaintiffs] persuade others to vote, educate potential voters about upcoming political issues, communicate their political support for particular issues, and otherwise enlist like-minded citizens in promoting shared political, economic, and social positions").  As Plaintiffs allege, when they encourage Tennessee citizens to register and vote, Plaintiffs necessarily engage those citizens in conversations about the importance of voting and civic engagement and the need for political reform.

Defendants attempt to slice and dice Plaintiffs' voter registration activities by asserting that "collecting a form and forwarding it to the proper officials is neither speech nor association." Defs.' Mem. at 14.  This argument failed in *Meyer* and fails here as well.  In *Meyer*, the defendants argued that the law against paid circulators "did not place any restraint on their own expression" because the plaintiffs could speak about the initiative without collecting signatures. 486 U.S. at 418.  The Supreme Court recognized that this type of interactive political speech cannot be so disaggregated without cutting it off at its knees: "[T]he circulation of a petition involves . . . interactive communication concerning political change." *Id.* at 421–22.  The Court recognized that without the petition circulation activity, such interactive communication would be far less effective.  Likewise, without voter registration drives, communication about voter registration loses its force.  *Id.* at 424 ("Colorado's prohibition of paid petition circulators restricts access to the most effective, fundamental, and perhaps economical avenue of political

discourse, direct one-on-one communication."); *see also Citizens for Tax Reform v. Deters*, 518 F.3d 375, 386 (6th Cir. 2008) (First Amendment protects plaintiffs' "right not only to advocate their cause but also to select what they believe to be the most effective means for doing so."). Thus, the Court should reject Defendants' facile attempt to artificially divorce Plaintiffs' communication with voters about voter registration from their collection and submission of voter registration forms.

Likewise, there is no "doubt that freedom to associate with others for the common advancement of political beliefs and ideas is a form of orderly group activity protected by the First and Fourteenth Amendments." *Kusper v. Pontikes*, 414 U.S. 51, 56–57 (1973) (internal quotation omitted). In conducting their voter registration activities, Plaintiffs associate with their volunteers, members, and other Tennessee citizens. *See, e.g.*, Am. Compl. ¶¶ 13, 16, 28, 36, 43, 45, 48, 52, 84, 102–07. Plaintiffs allege that the Law will limit the pool of available volunteers and staff for their voter registration activities. *Id.* ¶¶ 13, 180–84, 191, 193, 195–97. Just as in *Buckley*, the Law here violates the right to "associate for political purposes" and freely engage with members of the public, because it decreases the pool of potential canvassers and discourages participation in the political process. *See Buckley*, 525 U.S. at 215.

As such, Plaintiffs plead sufficient facts showing that their regulated activity constitutes core political expression and association. Defendants have failed to grapple with these allegations, instead summarily asserting that such protections do not apply to Plaintiffs' voter registration activities. Defs.' Mem. at 13–15. That assertion has no basis in law or logic.

### B. Plaintiffs Plead a Valid First Amendment Compelled Speech Claim (Claim II).

Defendants' attacks on Plaintiffs' compelled speech claim also miss the mark. The Law compels Plaintiffs to include disclaimers in any "public communication" regarding voter

13

registration status and on any websites they maintain concerning voter registration status. Am. Compl. ¶¶ 150–69. Among other things, Plaintiffs must include "clear and conspicuous and prominently placed" disclaimers that their public communications are "not made in conjunction with or authorized by the secretary of state." *Id.* ¶¶ 150–53 (quoting Tenn. Code Ann. § 2-19-145(a)(1), (b)(1), (c)(1), (d)). Plaintiffs allege that these disclaimers impose an unsustainable and undue burden on their activities and remain unsupported by any legitimate government interest. Am. Compl. ¶ 156; *see also id.* ¶¶ 157–69.

Defendants are flatly wrong that Plaintiffs' voter registration-related communications and websites constitute commercial speech. Defs.' Mem. at 15. Commercial speech is speech that "does 'no more than propose a commercial transaction.'" *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976) (citation omitted); *see also Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980) (stating that "commercial speech" is "expression related solely to the economic interests of the speaker and its audience"). Defendants cite no cases applying commercial speech doctrine to voter registration efforts or any similar speech. Assisting people in registering to vote and providing them information about their voter registration status plainly is not communication that proposes a commercial transaction.

Instead, the disclaimer requirements—and the penalties associated with any failures to abide by them—impermissibly burden political speech. Indeed, these specific requirements fundamentally "alter" Plaintiffs' political speech, without any compelling or legitimate government interest in support. *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988). As Plaintiffs' allegations make clear, the Law requires "clear and conspicuous and prominently placed" disclaimers in all of Plaintiffs' text messages, emails, websites, and even

14

interpersonal communications about voter registration—at the risk of criminal penalty—even if the disclaimer eclipses Plaintiffs' message itself. As Plaintiffs allege, these out-of-place disclaimers will dilute their speech and are likely to confuse the audience. And because Plaintiffs may be unable to guarantee that each of their interactions and communications will include the required disclaimer, their activities will inevitably be chilled as they slow or stop their efforts to communicate with the public about voter registration. *See, e.g.*, Am. Compl. ¶¶ 160–62.

Plaintiffs plead facts demonstrating that the inclusion of the Law's disclaimer statement would "alter[]" their speech, *Riley*, 487 U.S. at 795; Am. Compl. ¶¶ 90–91, 157, 163, as well as sufficient facts to demonstrate that the state's interests are not compelling and, even if they were, that the regulation is not narrowly tailored to achieve those interests, *see, e.g.*, Am. Compl. ¶¶ 111–16, 126; *see also Susan B. Anthony List v. Driehaus*, 814 F.3d 466, 473 (6th Cir. 2016). "In contrast to the prophylactic, imprecise, and unduly burdensome rule the State has adopted to reduce its alleged [harms], more benign and narrowly tailored options are available." *Riley*, 487 U.S. at 800. For instance, even if these disclaimers were ostensibly necessary or supported by a legitimate government interest—a claim for which the state has provided no evidence—the state could speak for itself to inform the public about the state-sponsored channels for voter registration information. *See Nat'l Inst. of Family & Life Advocates v. Becerra* ("*NIFLA*"), 138 S. Ct. 2361, 2376 (2018). Tennessee "cannot co-opt" Plaintiffs' speech "to deliver its message for it." *Id.*

Nor can the Law's disclosure and disclaimer requirements survive exacting scrutiny, since the disclaimers are not "substantial[ly] relat[ed]" to a "sufficiently important" government interest. *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 366 (2010); *see also Doe v.*

*Reed*, 561 U.S. 186, 195–96 (2010).  Again, the state has proffered absolutely no evidence of a substantial government interest in support of these requirements, and any post-hoc justifications that the state might now serve up are entirely unsubstantiated.  *See* Am. Compl. ¶ 156.

### C.  Plaintiffs Plead a Valid Overbreadth Claim (Claim III).

Defendants' arguments regarding Plaintiffs' overbreadth claim simply rehash their arguments against Plaintiffs' First Amendment claim (Claim I), and fall short for the same reasons.  In fact, in arguing that Plaintiffs have failed to state a valid overbreadth claim, Defendants show their cards by failing to mention the overwhelmingly broad sweep of the Law, noting only two of the myriad provisions Plaintiffs challenge.  *See* Defs.' Mem. at 18.

In "the First Amendment context," the Supreme Court "recognizes . . . [that] a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'"  *Stevens*, 559 U.S. at 473 (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008)); *see also Carey v. Wolnitzek*, 614 F.3d 189, 201 (6th Cir. 2010).  This is because "of the risk that 'enforcement of an overbroad law' may 'deter people from engaging in constitutionally protected speech' and may 'inhibit the free exchange of ideas.'"  *Carey*, 614 F.3d at 201 (quoting *Stevens*, 559 U.S. at 473) (internal alterations omitted).  The doctrine exists "to prevent the chilling of future protected expression."  *Staley v. Jones*, 239 F.3d 769, 779 (6th Cir. 2001).  Plaintiffs plead facts demonstrating that the overbreadth doctrine applies.

The Sixth Circuit has held that "any law imposing restrictions so broad that it chills speech outside the purview of its legitimate regulatory purpose will be struck down."[2]  *Deja Vu*

---

[2] That the challenged enactment is vague in addition to overbroad, *see infra* Section II.D, makes it all the more overbroad.  In conducting its overbreadth analysis, "a court should evaluate the ambiguous as well as the unambiguous scope of the enactment."  *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n.6 (1982).  Thus, "the vagueness of a law

*of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty.*, 274 F.3d 377, 387 (6th Cir. 2001).  Plaintiffs allege that unless the Law is enjoined they "will be forced to communicate fewer civic and nonpartisan political messages and to refrain from engaging in associational activity important to advancing their missions and beliefs," thus providing the public with "less information about how to participate in the democratic process," with "fewer options to register to vote," and "fewer opportunities to associate with Plaintiffs in meaningful civic activities." Am. Compl. ¶ 16.  As Plaintiffs allege, the language of the Law is so broad with respect to what communications must be accompanied by the "prominent[]" disclaimer requirement that it will severely chill Plaintiffs' protected speech.  *See, e.g.*, Am. Compl. ¶¶ 33, 158, 160, 162–69, 223. Defendants' narrative description of when the Law requires the challenge disclaimer, Defs.' Mem. at 18, does not mirror the text of the Law itself, which Plaintiffs plead impacts their protected speech.  If anything, Defendants' description of the Law reveals that they believe only a more circumscribed version of the Law would be defensible.[3]  *Id.*  This only further demonstrates that the Law itself is "so broad that it chills speech outside the purview of its legitimate regulatory purpose."  *Deja Vu of Nashville*, 274 F.3d at 387.

Plaintiffs adequately plead that the Law implicates "public statements and discussions urging citizens to vote," Defs.' Mem. at 18, which are part and parcel of Plaintiffs' voter registration activities.  *See supra* Section III.A.  Defendants' assertions that First Amendment

---

affects overbreadth analysis."  *Id.*  The Supreme Court "has long recognized that ambiguous meanings cause citizens to 'steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked.'"  *Id.* (quoting *Baggett v. Bullitt*, 377 U.S. 360, 372 (1964)); *see also Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972); *Speiser v. Randall*, 357 U.S. 513, 526 (1958).

[3] That Defendants might urge a more narrow interpretation of the Law in this Court does not save it.  *See United States v. Davis*, 139 S. Ct. 2319, 2323 (2019) (holding that when a legislature "passes a vague law, the role of courts under our Constitution is not to fashion a new, clearer law to take its place, but to treat the law as a nullity and invite [them] to try again").

17

interests are not implicated here, and therefore that the overbreadth doctrine does not apply, not only fail as a matter of law, *see id.*, but also as a matter of fact.

### D. Plaintiffs Plead a Valid Void for Vagueness Claim (Claim IV).

To succeed on a vagueness challenge, Plaintiffs must demonstrate either that the Law (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits"; or (2) "authorizes or even encourages arbitrary and discriminatory enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2566 (2015). Plaintiffs plead sufficient facts to show that the Law is vague on both scores.

Where a vague enactment implicates speech rights, the scrutiny is even more exacting. *See Reno v. Am. Civil Liberties Union* ("*ACLU*"), 521 U.S. 844, 871 (1997). As a "content-based regulation" of core political speech related to voter registration, the Law "raises special First Amendment concerns because of its obvious chilling effect on free speech." *Id.* at 871–72. And where, as here, a vague law implicating free speech carries criminal penalties, the concern is all the more profound as "the severity of criminal sanctions may well cause speakers to remain silent rather than communicate even arguably unlawful words, ideas, and images." *Id.* at 872. The "increased deterrent effect" of a criminal statute "coupled with the 'risk of discriminatory enforcement' of vague regulations, poses greater First Amendment concerns than those implicated by [a] civil regulation." *Id.*; *see also FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253–54 (2012) ("When speech is involved, rigorous adherence to [vagueness doctrine] requirements is necessary to ensure that ambiguity does not chill protected speech.").

Defendants ignore this well-established Supreme Court precedent, and instead rely on a misstatement of the governing law: they assert that a "statute will be struck down as facially vague only if the plaintiff has 'demonstrate[d] that the law is impermissibly vague in all of its applications,'" citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S.

489, 497 (1982). Defs.' Mem. at 20. This is not the test where, as here, "the enactment reaches a substantial amount of constitutionally protected conduct." *Vill. of Hoffman Estates*, 455 U.S. at 494. The very case Defendants cite explains that the "impermissibly vague in all of its applications" standard only applies to laws that "implicate[] no constitutionally protected conduct." *Id.* at 494–95.

Plaintiffs identify numerous ways in which the law "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," *Johnson*, 135 S. Ct. at 2566. *See* Am. Compl. ¶¶ 120–25, 129–32, 136, 138–40, 150, 153–54, 171–73, 185, 240–52. Defendants' response to these substantial and detailed allegations is that the dictionary definitions of the words in the Law are known. Defs.' Mem. at 21. Plaintiffs are not alleging that they do not know the dictionary definition of certain words. They allege that the Law does not provide sufficient clarity such that it is understood "what conduct it prohibits." *Johnson*, 135 S. Ct. at 2566. Courts "do not . . . construe the meaning of statutory terms in a vacuum," they "interpret the words 'in their context and with a view to their place in the overall statutory scheme.'" *Tyler v. Cain*, 533 U.S. 656, 662 (2001). In context, the Law does not provide notice of what conduct it prohibits—a flaw only compounded by the Law's criminal penalties and its regulation of speech falling within the core of the First Amendment's protections. *See ACLU*, 521 U.S. at 871–72. Additionally, Plaintiffs plead that the Law's vagueness is all the more likely to confound those seeking not to run afoul of it, as even certain Defendants made divergent statements regarding the Law's applicability to various situations during its enactment. *See, e.g.*, Am. Compl. ¶ 125. Notably, in their motion to dismiss, Defendants largely do not provide explanations to clarify the questions Plaintiffs raise in their Amended Complaint. If the statutory language is as clear as Defendants contend, it is a mystery that they do not simply explain it.

19

Plaintiffs do not strain to produce "clever hypotheticals," Defs.' Mem. at 21, but rather, they illustrate that the Law does not provide basic notice of the conduct it prohibits. For example, does an organization receiving grants to conduct voter registration drives constitute being "paid" such that the Law governs its conduct? *See* Am. Compl. ¶¶ 125–26, 243. A federal court in Ohio struggled with the same vagueness concerns while analyzing a similar set of voter registration restrictions. *See Project Vote*, 455 F. Supp. 2d at 704 ("The examples posed by the Court during oral arguments illustrate how difficult it is to understand what is meant by 'compensation' in this context. Thus, it is unclear whether full-time workers with other duties are 'compensated' when they are diverted from their regular duties to help with voter registration drives.").

Likewise, Defendants' suggestion that they *might* attempt to correct the Law's vagueness through future trainings (of unspecified content) or future rulemaking (also of unspecified content) is no answer. Defs.' Mem. at 21. Employing such non-textual, voluntary, state efforts to attempt to cure a constitutionally defective statute is not what the Constitution requires. As the Supreme Court has emphasized, constitutional vagueness problems are not addressed by leaving citizens "at the mercy" of the government's "*noblesse oblige*." *Stevens*, 559 U.S. at 480; *see also Miller v. City of Cincinnati*, 709 F. Supp. 2d 605, 627 (S.D. Ohio 2008), *aff'd*, 622 F.3d 524 (6th Cir. 2010) ("We will not presume that the public official responsible for administering a legislative policy will act in good faith and respect a speaker's First Amendment rights."). Courts cannot "uphold an unconstitutional statute merely because the Government promised to use it responsibly." *Stevens*, 559 U.S. at 480 (citing *Whitman v. Am. Trucking Assns., Inc.*, 531 U.S. 457, 473 (2001)). Vague promises of future action would otherwise doom Plaintiffs and

other Tennessee citizens to trying to conform their conduct to a law that affords them no

"reasonable opportunity to understand what conduct it prohibits." *Johnson*, 135 S. Ct. at 2566.

In advancing their argument against Plaintiffs' vagueness claim, Defendants make another misstatement of law—all but conceding that if the correct Supreme Court precedents are applied, the Law is doomed as unconstitutionally vague. Defendants charge that "a litigant raising a vagueness challenge must show that the statute in question is vague as applied to his own conduct, without regard to its potentially vague application in other circumstances." Defs.' Mem. at 20–21 (citing *United States v. McKinnon Bridge Co.*, 514 F. Supp. 546, 548 (M.D. Tenn. 1981)). Though Plaintiffs plead that the Law in question here *is* vague as relates to their own conduct, *see, e.g.*, Am. Compl. ¶¶ 23, 29, 31, 44, 49, 71, 124–26, the Supreme Court has also "relaxed that requirement in the First Amendment context," *United States v. Williams*, 553 U.S. 285, 304 (2008). The standard Defendants urge be used only applies to those challenges that "do not involve First Amendment freedoms." *Vill. of Hoffman Estates*, 455 U.S. at 495 n.7; *see also Miller*, 709 F. Supp. 2d at 626–27 ("Under the First Amendment, speakers are protected from arbitrary and discriminatory enforcement of vague standards." (citing *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 588 (1998))).

Plaintiffs plead sufficient facts to conclude that the Law "authorizes or even encourages arbitrary and discriminatory enforcement." *Johnson*, 135 S. Ct. at 2566. As the Supreme Court has recently noted, "Vague statutes threaten to hand responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges, eroding the people's ability to oversee the creation of the laws they are expected to abide." *United States v. Davis*, 139 S. Ct. 2319, 2325 (2019). In arguing against standing, Defendants all but concede that the Law will be applied differentially to different individuals and organizations. Defs.' Mem. at 10. Plaintiffs

plead facts showing that the Law itself virtually encourages "arbitrary and discriminatory enforcement," *Johnson*, 135 S. Ct. at 2566, as it makes the imposition of fines—including whether the fines are levied in each county in which "incomplete" forms are submitted or just once—permissive, *see* Am. Compl. ¶¶ 136, 139; *see also* Defs.' Mem. at 10. This leaves wide open the ability to fine organizations an official sees as their opposition, while leaving unmolested a political party with which the official affiliates, for example. This risk is compounded by the fact that the Law was seemingly passed with a single organization in mind, *see* Am. Compl. ¶ 113, and that it appears to be aimed at organizations that certain state actors view as at odds with their political goals, *see id.* ¶ 116.

### E. Plaintiffs Plead a Valid Claim Challenging the Burden on their Political Speech and Association in Connection with the Fundamental Right to Vote in Violation of the First and Fourteenth Amendments (Claim V).

Defendants appear to misapprehend Plaintiffs' fifth claim. While of course an organization itself cannot vote, Plaintiffs plead that the Law burdens their political speech and association in connection with the right to vote. Am. Compl. at 66 ("Burden on Political Speech and Association in Connection with the Fundamental Right to Vote"). Plaintiffs' speech and association activities in conducting voter registration drives and making communications regarding voter registration status plainly implicate the right to vote. *Id.* ¶¶ 258–62. Plaintiffs adequately plead injuries to their *own* First and Fourteenth Amendment rights in this claim. *Id.* ¶¶ 261–62, 265; *see also supra* Section III.A.

To evaluate this claim, the Court should apply the balancing test articulated in *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983), and *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). *See Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 204 (2008) (Scalia, J., concurring) ("To evaluate a law respecting the right to vote—whether it governs voter qualifications, candidate selection, or the voting process—we use the approach set out in *Burdick*."). Other courts judging

similar schemes to restrict the ability of those who aim to assist others in registering to vote have applied this line of cases. *See, e.g.*, *Browning II*, 863 F. Supp. 2d at 1158–59; *Project Vote*, 455 F. Supp. 2d at 701; *Cobb*, 447 F. Supp. 2d at 1331; *Browning I*, 575 F. Supp. 2d at 1319.

Plaintiffs allege injuries to their own "rights protected by the First and Fourteenth Amendments that [they] seek[] to vindicate." *Anderson*, 460 U.S. at 789. Plaintiffs also allege throughout that the Law imposes severe burdens on their rights and that the state's interests do not "make it necessary to burden [their] rights." *Burdick*, 504 U.S. at 434; *see, e.g.*, Am. Compl. ¶¶ 116, 126, 266. Plaintiffs thus state a valid claim challenging the burden on their political speech and association in connection with the fundamental right to vote.

Nor is Plaintiff Memphis Central Labor Council ("MCLC") "attempt[ing] to sidestep" anything. Defs.' Mem. at 22. Rather, it is advancing the constitutional rights of its unions' members, which it is permitted to do. *See, e.g.*, *Friends of Tims Ford v. Tennessee Valley Auth.*, 585 F.3d 955, 967 (6th Cir. 2009). Organizations have associational standing "when: (1) the organization's 'members would otherwise have standing to sue in their own right'; (2) 'the interests it seeks to protect are germane to the organization's purpose'; and (3) 'neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Id.* (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)); *see also Auto. Workers v. Brock*, 477 U.S. 274 (1986) (affirming union's right to sue on behalf of its members when meeting test of *Hunt*); *Sandusky Cty. Dem. Party v. Blackwell*, 387 F.3d 565, 574 (6th Cir. 2004) (holding organizations had representative standing to assert "the rights of their members who will vote"). An organization like MCLC "stands in the shoes of its members" in advancing constitutional rights. *Kardules v. City of Columbus*, 95 F.3d 1335, 1354 n.12 (6th Cir. 1996).

The challenged Law severely burdens the ability of members of MCLC's unions to register to vote and therefore their ability to exercise the right to vote. *See* Am. Compl. ¶¶ 261, 265. Defendants are also incorrect that because there are other ways to register to vote, that these members have not been harmed. Defs.' Mem. at 22. This simply is not the law. The question is not whether members of MCLC's unions are completely blocked from voting because of the Law, but whether their right to vote is unduly burdened by the Law. In evaluating claims of undue burdens on the right to vote, courts "weigh 'the character and magnitude of the asserted injury' against the 'precise interests put forward by the State . . . taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Obama for Am. v. Husted*, 697 F. 3d 423, 433 (6th Cir. 2012). Many members of MCLC's unions rely upon MCLC's voter registration efforts to register and thereby be able to vote. The Law burdens this pathway to voter registration and can only stand if adequate justifications outweigh these new burdens. That question cannot be answered at the motion to dismiss stage. *See also supra* note 1.

The burdens that the Law places on access to voter registration by stymieing voter registration drives and registration-related communications are severe, Am. Compl. ¶¶ 108, 193– 97, 260–63, and are not justified by any legitimate state interest, *id.* ¶¶ 116, 126, 266. Thus, in addition to the valid claim challenging the burden on Plaintiffs' political speech and association in connection with the fundamental right to vote, Plaintiff MCLC also states a valid claim with respect to the burdens imposed on the rights of its union members and their households.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied.

Dated: July 19, 2019

Respectfully submitted,

/s/ Theresa J. Lee

Sophia Lin Lakin*
Theresa J. Lee*
Davin Rosborough*
Dale E. Ho*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
slakin@aclu.org
tlee@aclu.org
drosborough@aclu.org
dho@aclu.org

Sarah Brannon*, **
American Civil Liberties Union Foundation
915 15th Street, 6th Floor
Washington, DC 20005
Tel.: (202) 544-1681
sbrannon@aclu.org
** not admitted in DC; DC practice limited to federal court only

William H. Harbison, BPR#7012
C. Dewey Branstetter, Jr. BPR#9367
Hunter C. Branstetter, BPR#32004
Sherrard Roe Voigt & Harbison
150 3rd Avenue South, Suite 1100
Nashville, TN 37301
Tel.: (615) 742-4200
bharbison@srvhlaw.com
dbranstetter@srvhlaw.com
hbranstetter@srvhlaw.com

Thomas H. Castelli, BPR#024849
Legal Director
Mandy Floyd, BPR#031123
ACLU Foundation of Tennessee
P.O. Box 120160
Nashville, TN 37212
Tel.: 615-320-7142
tcastelli@aclu-tn.org
mfloyd@aclu-tn.org

Danielle Lang*
Urja Mittal*
Campaign Legal Center
1101 14th Street NW, Suite 400
Washington, DC 20005
Tel.: (202) 736-2200
dlang@campaignlegal.org
umittal@campaignlegal.org

Michelle Kanter Cohen*
Jon Sherman*
Fair Elections Center
1825 K Street NW, Suite 450
Washington, DC 20006
Tel.: (202) 331-0114
mkantercohen@fairelectionscenter.org
jsherman@fairelectionscenter.org

Attorneys for Plaintiffs
*admitted pro hac vice

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on July 19, 2019

by operation of the Court's electronic filing system on the following:

> Janet M. Kleinfelter
> Alexander S. Rieger
> Kelley L. Groover
> Office of the Attorney General and Reporter
> War Memorial Building, 3rd Floor
> P.O. Box 20207
> Nashville, TN 37202
> (615) 741-2408
> janet.kleinfelter@ag.tn.gov
> alex.rieger@ag.tn.gov
> kelley.groover@ag.tn.gov

*/s/ Theresa J. Lee*
Theresa J. Lee